UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TRONE HEALTH SERVICES, INC.; )
REDDISH PHARMACY, INC.; JABOS )
PHARMACY, INC.; OAK TREE )
PHARMACY; APEX PHARMACY; and )
AMRUT JAL, LLC, )
                                )
         Plaintiffs, )   No. 4:18-CV-467 RLW
                                )
v. )
                                )
EXPRESS SCRIPTS HOLDING COMPANY; )
EXPRESS SCRIPTS MAIL ORDER )
PROCESSING, INC.; EXPRESS SCRIPTS )
MAIL PHARMACY SERVICES, INC.; and )
DOES 1-20, )
                                )
         Defendants. )

## MEMORANDUM AND ORDER

This matter is before the court on Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 14). This matter is fully briefed and ready for disposition.

## BACKGROUND[1]

Defendant Express Scripts, Inc. ("ESI") is the largest Pharmacy Benefit Manager ("PBM") in the United States. (Complaint, ECF No. 1, ¶2). ESI, as a PBM, acts as a middleman between Plan Sponsors (insurers, employers and government agencies who provide prescription drug coverage) and retail pharmacies who dispense prescription drugs. *Id.* Plaintiffs are retail pharmacies that contract with ESI to participate in ESI's nationwide retail pharmacy network.

---

[1] In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant. *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

(Complaint, ¶1). ESI, as a PBM, also offers mail order dispensing pursuant to its agreements with Plan Sponsors. *See* Pharmacy Provider Agreements (the "PPA") at 1 (identifying mail order dispensing as one of ESI's service obligations to its Plan Sponsors).[2]

ESI requires Plaintiffs to include customer information and prescription data in the claims for payment they submit to ESI. Plaintiffs allege Defendants used confidential, proprietary information regarding Plaintiffs' customers and their prescriptions to forcibly switch customers from Plaintiffs' retail pharmacies to Defendants' own mail-based pharmacies without Plaintiffs' or their customers' authorization. Plaintiffs allege they have no ability to prevent ESI from accessing customer information and prescription data because ESI requires Plaintiffs to transmit the customer information to ESI or else ESI will not remit payment for customers' prescriptions. (Complaint, ¶34).

Plaintiffs bring claims against Defendants for (1) attempted monopolization, (2) unfair competition, (3) breach of contract, (4) breach of implied covenant of good faith and fair dealing, (5) interference with prospective economic advantage, (6) violation of the uniform trade secrets act, and (7) fraud.

---

[2] The Complaint references the PPA as "Exhibit A", but no exhibits are attached to the Complaint. The Court considers the PPA and the Provider Manual "embraced by the pleadings" without converting this motion to dismiss into a motion for summary judgment. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999) (internal quotations omitted)("When considering ... a motion to dismiss under Fed.R.Civ.P. 12(b)(6)[ ], the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." ; *see also Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir.2011); *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

## DISCUSSION

### I.  Standard of Review

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp., v. Twombly,* 550 U.S 544, 570 (2007). A "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).

### II.  Discussion

#### A. Parties' Agreement

ESI's obligations to its Plan Sponsors are governed, in part, by the PPA and Network Provider Manual (the "Provider Manual") (collectively, the "Agreements"). Under the Agreements, "ESI is the owner of all information it obtains through the administration and processing of any and all pharmacy claims submitted by" Plaintiffs. (Provider Manual at 17). The Agreements contain several references to Plaintiffs' obligations to provide ESI with Member information. (ECF No. 18, Exhibit C at 3 (citing PPA §2.3d ("Provider shall ... cooperate with ESI and ... provide any information requested by ESI in order to verify any information submitted with a claim necessary to pay the claim.")).

Further, ESI's Agreements with Plaintiffs identify ESI's "mail service dispensing" program as one of ESI's "service obligations to its [Plan] Sponsors." *See* PPA at 1. Likewise, section 2.8 of the PPA provides, "Provider shall ... cooperate with ESI, including providing to ESI any and all information requested by ESI necessary for coordinating any benefits provided to

any Member, as directed by and in accordance with ESI's then current policies and procedures." (ECF No. 18 at 1, PPA §2.8). Thus, the Agreements allow for ESI to use information provided by Plaintiffs' customers to be used in connection with any service obligations, including mail service dispensing.

**B. Breach of Contract or Implied Covenant**

Plaintiffs assert their breach of contract claim is based on ESI's failure to comply with section 5.3 of the PPA, which requires ESI to comply with all federal and state laws, rules and regulations regarding the confidentiality of patient information, including Health Insurance Portability and Accountability Act of 1996 (HIPPA) and the Health Information Technology for Economic and Clinical Health (HITECH) Act. (Complaint, ¶76).[3] Plaintiffs argue "it is irrelevant what the Contract does nor does not permit ESI to do. Instead, the only relevant consideration is what HIPAA and the HITECH Act permit ESI to do." (ECF No. 23 at 4). Plaintiffs assert ESI violates HIPAA by "using the patient data it receives from Plaintiffs to switch those patients to mail order," which, in turn, breaches section 5.3 of the PPA. (ECF No. 23 at 3). Plaintiffs' Complaint alleges that patients did not authorize a switch to mail order, but only learned that their prescriptions were switched to mail order when they attempted to refill those prescriptions at Plaintiffs' pharmacies. (Complaint, ¶42). Plaintiffs argue that the patients' general consent to receive prescriptions by mail order does not satisfy HIPAA's requirement. Rather, HIPAA authorizations must specifically identify the information to be used or disclosed, specifically identify who is authorized to make the disclosure and who may use the disclosed information, and be signed by the individual authorizing the disclosure. (ECF No. 23 at 4 (citing 45 C.F.R. §164.508)).

---

[3]https://www.hhs.gov/hipaa/for-professionals/special-topics/hitech-act-enforcement-interim-final-rule/index.html (last visited February 1, 2019).

The Court holds Plaintiffs' breach of contract claim against Defendants fails to state a claim because it cannot be based upon HIPAA/HITECH. First, no private cause of action exists for a HIPAA violation, even under a contract claim. *Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 138 (8th Cir. 2009) (HIPAA does not create a private right of action); *see also Cairel v. Jessamine Cty. Fiscal Court*, No. 5:15-CV-186-JMH, 2015 WL 8967884, at *4 (E.D. Ky. Dec. 15, 2015)("Regardless of whether the contract included a HIPAA provision, there simply is no private right of action for violations of HIPAA, at the state or federal level."). Similarly, Plaintiffs (the pharmacies) cannot direct the use of the patient's information. Only the patient can authorize how his or her information is used. *See* 45 C.F.R. §164.508(c)(1)(a valid authorization under HIPAA must contain the "signature of the individual and date.")[4] Thus, Plaintiffs' breach of contract claim fails to state a claim as a matter of law.

Plaintiffs further assert ESI breached the implied covenant of good faith and fair dealing. Plaintiffs allege "ESI breached its duty of good faith and fair dealing owed to Plaintiffs by using the patient information supplied pursuant to contracts' requirements in order to take customers away from Plaintiffs and move those customers to Express Scripts' competing mail order pharmacy." (Complaint, ¶82). Plaintiffs state the Provider Manual does not give ESI any claim to ownership over the customer and prescription information at issue. (ECF No. 23 at 4-5). Plaintiffs maintain the Provider Manual distinguishes between (1) the "claims submitted by" Plaintiffs and (2) the information ESI obtains through the administration and processing of those claims. *See* Provider Manual, ECF No. 17 at 17, §2.4 ("ESI is the owner of all information it obtains through the administration and processing of any and all pharmacy claims submitted by" Plaintiffs). Plaintiffs allege ESI "requires Plaintiffs to include customer information and

---

[4] In fact, Plaintiffs fail to identify one instance where ESI did not receive a valid authorization from its Plans' patients or receive a particular patients' authorization. *See* ECF No. 28 at 6.

prescription data in the claims for payment they submit to ESI." (Complaint, ¶25). Plaintiffs contend this is separate and apart from ESI's processing of their claims because the relevant patient and prescription information is provided to ESI by Plaintiffs when they submit their claims and as part of those claims (Complaint, ¶25), which occurs prior to ESI administering or processing those claims. That is, "[o]nly after Plaintiffs submit those claims and provide that information does ESI administer anything." (ECF No. 23 at 5 (citing Complaint, ¶¶26-27)); *see also* Complaint, ¶29 ("After ESI receives Plaintiffs' claims (including the customer and prescription information Plaintiffs are required to include with those claims), it administers and processes Plaintiffs' claims"). At that later point, ESI obtains other information, including, for example, patients eligibility for coverage and the co-pay owed by the patient and restrictions on the patients' prescriptions, through ESI's processing and administration of Plaintiffs' claims. (ECF No. 23 at 5 (citing Complaint, ¶29). Plaintiffs contend that only the information utilized in the second processing step is owned by ESI according to the Provider Manual. (ECF No. 23 at 5). Plaintiffs argue the Provider Manual does not give ESI or any other Defendant ownership of the prescription and patient information because ESI already had that information when Plaintiffs submitted it as part of the claims process. (ECF No. 23 at 5-6). Thus, Plaintiffs contend ESI does not obtain the patient and prescription information at issue here when it administers and processes the claims and, as a result, ESI does not own that information under the plain terms of the Provider Manual. (*Id.*).

Moreover, Plaintiffs assert the Provider Manual was not incorporated into the parties' contract and, therefore, not a part of the contract. Plaintiffs contend the contract provisions, PPA §§2.12 and 7.3, merely mention the Provider Manual and do not express a clear intention to make the Provider Manual and all of its contents a part of the parties' contracts. (ECF No. 23 at

6-7). Rather, Plaintiffs argue that the Provider Manual is intended to be incorporated only as to the "subject matter herein." Section 7.3. Plaintiffs assert that the "subject matter" is "made clear by the other contract provisions that also refer to the Provider Manual, all of which refer to the Manual for the methods and procedures it describes." (ECF No. 23 at 8 (citing §2.3.a, 2.3.b, 2.4.a, 2.16.b, 2.17.a)). Plaintiffs state that none of the cited sections has anything to do with the ownership of patient or prescription information. That is, Plaintiffs assert that the Provider Manual is incorporated into the parties' contract only as to the methods and procedures set forth in the Manual. (ECF No. 23 at 8).

Plaintiffs finally argue that the contract does not permit ESI to use the information it receives from Plaintiffs to facilitate Defendants' mail order business. (ECF No. 23 at 9-10). Plaintiffs maintain that the PPA indicates that ESI "manages ... mail services dispensing," not that it fills or will fill Plaintiffs' customers' prescriptions through its own mail order pharmacy. (PPA at 1) (WHEREAS, ESI administers and manages Prescription Drug Programs for its Sponsors ..., which programs include claims administration, mail service dispensing and other pharmacy benefit management services....")

The Court, however, agrees with the well-reasoned decisions, particularly those of this District, finding the Provider Manual is incorporated into the contract. Section 1.13 of the PPA states that the "Provider Manual" is "the written handbook describing the practices, rules, operational requirements and policies and procedures established by ESI for Provider (and its Pharmacies) regarding their provision of Covered Medications to Members." ECF No. 15 at 3. Further, Section 7.3 of the PPA states that the [Provider] Manual is part of the "entire agreement of the parties with respect to the subject matter herein[.]" *See also Pearson's Pharmacy, Inc. v. Express Scripts, Inc.*, 378 F. App'x 934, 935 (11th Cir. 2010) ("The agreements stated that the

'Provider Manual' was part of the contract. The manual contained the 'practices, policies, rules and procedures' governing reimbursement from Express Scripts. Express Scripts agreed, in subsection E of section 2 of the agreements, to 'comply with' the manual."); *Real Time Pharmacy Servs., Inc. v. Express Scripts, Inc.*, No. 4:17CV1096 HEA, 2017 WL 1196485, at *3 (E.D. Mo. Mar. 31, 2017) ("Manual ... was incorporated into the contract."). These contractual obligations make clear that (1) ESI has the right to use Member information for fulfilling its obligations to its Plan Sponsors and their Members, (2) certain prescriptions will be filled by mail order, and (3) Plan Sponsors and their members determine the methods by which prescriptions are filled.

Based upon these findings, the Court holds that the PPA permits Defendants to fill mail order pharmacy prescriptions. As noted, the PPA Section 2.8 provides that Plaintiffs "shall ... cooperate with ESI, including providing to ESI any and all information requested by ESI necessary for coordinating any benefits provided to any Member." Mail service dispensing falls within the category of "any benefit provided to any Member." Likewise, Plaintiff's arguments that ESI was not permitted under the PPA to refill customer's prescriptions are not supported. Plaintiffs concede that the PPA permits ESI to use patient information to "administer" and "manage" mail service dispensing, which the Court holds includes the filling of patients' prescriptions through its own mail order pharmacy.[5] The Court concludes that the PPA's explicit terms permit ESI to refill customer's medications through its mail service pharmacy and requires dismissal of Plaintiffs' claims.

---

[5] Merriam-Webster online dictionary defines "administer" as "to provide or apply: DISPENSE." https://www.merriam-webster.com/dictionary/administer (last visited February 13, 2019). Merriam-Webster online dictionary defines "manage" as "to handle or direct with a great deal of skill." https://www.merriam-webster.com/dictionary/manage (last visited February 13, 2019).

Likewise, the Provider Manual permits ESI the right to use patient information to fill prescriptions through its mail pharmacy. Section 2.4 of the Provider Manual grants ownership to ESI over the information obtained in the "administration and processing" of pharmacy claims. As stated, Plaintiffs assert that ESI does not obtain ownership over customer information because the information used to administer and processes Plaintiffs' claims is different from the information that Plaintiffs submit. However, the Court holds that this argument is nonsensical. ESI obtains the information from Plaintiffs to administer and process pharmacy claims and that information, per the Provider Manual, is under ESI's control. Moreover, the Provider Manual includes no language precluding ESI from using the customer information independent of ESI's relationship with Plaintiffs. The Court holds ESI is within its rights under the Provider Manual to use the information at issue to facilitate its mail service dispensing business. Therefore, the Court holds that Plaintiffs fail to state a claim for breach of implied covenant of good faith and fair dealing as a matter of law and grants Defendants' motion to dismiss this claim.

### C. Attempted Monopolization

To prevail on a claim of attempted unlawful monopolization, Plaintiffs must prove "(1) a specific intent by the defendant to control prices or destroy competition; (2) predatory or anticompetitive conduct undertaken by the defendant directed to accomplishing the unlawful purpose; and (3) a dangerous probability of success." *Gen. Indus. Corp. v. Hartz Mountain Corp.,* 810 F.2d 795, 801 (8th Cir. 1987); *HDC Med., Inc. v. Minntech Corp.*, 474 F.3d 543, 549 (8th Cir. 2007); *see also* 15 U.S.C. §2. "The specific intent element requires proof that the defendant intended his acts to produce monopoly power"; that is, that the defendant intended "to control prices or to restrain competition unreasonably." *Id.* "In order to determine whether there is a dangerous probability of monopolization, courts have found it necessary to consider

the relevant market and the defendant's ability to lessen or destroy competition in that market." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 113 S. Ct. 884, 891, 122 L. Ed. 2d 247 (1993).

Plaintiffs contend the Complaint contains allegations of monopolistic intent, which can be inferred from Defendants' conduct. First, Plaintiffs allege Defendants' conduct eliminates competition by barring Plaintiffs from competing for refills and prohibiting patients from purchasing their refills from Plaintiffs. (ECF No. 23 at 9; Complaint, ¶¶42-43, 44(b)). Second, Plaintiffs allege anticompetitive or predatory conduct in that Defendants switch Plaintiffs' customers to mandatory mail order, thereby prohibiting Plaintiffs from refilling those customers' prescriptions and eliminating all lawful competition on those refills. (ECF No. 23 at 10). Third, Plaintiffs contend they have alleged a dangerous possibility that Defendants will succeed in monopolizing the relevant market, which Plaintiffs allege is the market of "maintenance medications paid for by ESI's insurance company customers." (ECF No. 23 at 10 (citing Complaint, ¶60)). Plaintiffs claim Defendants ensure that only they can refill patients' prescriptions by switching patients to mandatory mail order. (ECF No. 23 at 11 (citing Complaint, ¶¶42, 65). Plaintiffs note Defendants have quintupled their mail order revenues and quadrupled the number of prescriptions they fill via mail order in just 4 years. (ECF No. 23 at 11 (citing Complaint, ¶47)). Fourth, Plaintiffs' Complaint alleges facts reflecting Plaintiffs suffered antitrust injury. (ECF No. 23 at 11). Plaintiffs assert they have been injured by the loss of revenue derived from refilling their customers' prescriptions, which is attributable to Defendants' refilling patients' prescriptions via Defendants' own mail order pharmacy. (ECF No. 23 at 12-13).

The Court holds that Plaintiffs' attempted monopolization claim fails for a number of reasons. First, Plaintiffs fail to plead a relevant market. "It is the plaintiff's burden to define the relevant market." *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 560 (8th Cir. 1998). "The definition of the relevant market has two components—a product market and a geographic market." *Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340, 345 (8th Cir. 1995). "The relevant product market includes all reasonably interchangeable products." *Double D Spotting Serv.*, 136 F.3d at 560 (citing *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997)). In exceptional circumstances, a relevant market can be defined by the defendant's own product or service. *See Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018).

Plaintiffs allege the "relevant market" is maintenance medication prescriptions "issued to [ESI's] ... clients' beneficiaries." (Complaint, ¶41; Complaint, ¶60-61); *see also* ECF No. 23 ("Plaintiffs have alleged a relevant market consisting of maintenance medications paid for by ESI's insurance company customers"). This is the same market that the Eighth Circuit previously deemed insufficient. *See Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018) ("Irmat claims that the relevant market is the market for mail-order pharmacy services to Express Scripts members–a submarket made up of only Express Scripts's services within the broader market of all mail-order pharmacy services. ... We conclude that Irmat's market is too narrowly defined."). Plaintiffs' alleged relevant market fails because there are other maintenance medications paid for by other PBM's plan sponsor customers and other participants in the maintenance medication market. That is, Plaintiffs are free to fill maintenance medications paid for by other PBM plan sponsors. *See Little Rock Cardiology*

*Clinic PA v. Baptist Health*, 591 F.3d 591, 598 (8th Cir. 2009) ("in an antitrust claim brought by a seller, a product market cannot be limited to a single method of payment when there are other methods of payment that are acceptable to the seller"). The Court holds Plaintiffs' attempted monopolization claim fails on this basis alone.

In addition, the Court finds that Plaintiffs have not alleged anticompetitive or predatory conduct from which a specific intent to achieve monopoly power can be inferred, or a requisite antitrust injury from said conduct. The Court finds nothing inherently anticompetitive in Plaintiffs' purported inability to compete with ESI for refills. *See Domel, Inc. v. Aetna Life & Cas.*, No. C-94-2670-CAL, 1995 WL 302438, at *2 (N.D. Cal. May 10, 1995), *aff'd*, 99 F.3d 1145 (9th Cir. 1996) (dismissing antitrust claim where "it appears that the essence of this claim is that the insurance forced defendants' insureds to buy their pharmaceuticals from designated pharmacies, and hence independent pharmacies lost some or all of the business of those insureds"). Plaintiffs have not alleged any conduct that may "adversely affect" customers. Nothing about mail order filling of presecriptions is inherently anti-competitive. At most, Plaintiffs have alleged that they were adversely affected by ESI's actions, but this is insufficient for an attempted monopoly claim. *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557 (9th Cir. 2008) ("means harm to the process of competition and consumer welfare, not harm to individual competitors"). The Court dismisses Plaintiffs' attempted monopolization claim also for this reason.

**D. Fraud**

Under Missouri law, the elements of common-law fraud are: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, (9) and his consequent and proximate injury." *Washburn v. Kansas City Life Ins. Co.*, 831 F.2d 1404, 1411 (8th Cir.1987) (quoting *Heitman v. Brown Group, Inc.*, 638 S.W.2d 316, 319 (Mo. Ct. App. 1982)). Each of these elements must be established to make a submissible case of fraud, and failure to establish any one is fatal to recovery. *Id.*

Plaintiffs allege that their contracts with ESI required them to provide confidential information regarding patients and their prescriptions each time Plaintiffs sought to fill a prescription. (Complaint, ¶97). Plaintiffs allege that ESI represented that the information it received from Plaintiffs would be used to confirm those patients' eligibility for insured prescription benefits and to reimburse Plaintiffs for filling those Plaintiffs' prescriptions. *Id.* Plaintiffs, however, contend ESI did not notify them that that ESI would use that patient information to switch those patients away from Plaintiffs' retail pharmacies to Defendants' competing mail-order pharmacies. (Complaint, ¶98). Therefore, Plaintiffs maintain that ESI's omission of the information that ESI intended to switch Plaintiffs' patients to mail-order service constitutes fraud by omission.

The Court holds that Plaintiffs fail to properly allege a fraud claim. As an intial matter, this is not an omission claim. Rather, Plaintiffs allege that ESI represented "that the information it received from Plaintiffs would be used to confirm those patients' eligibility for insured prescription benefits and to reimburse Plaintiffs for filling those Plaintiffs' prescriptions." (ECF No. 23 at 13). As this is not an omission claim, the more lenient standard of Rule 9(b) does not

apply. Plaintiffs still "must plead 'such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013)(citing *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir.2001) (quotation and citation omitted). "In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (quotation and citation omitted). The Court holds that Plaintiffs' claim for fraud fails because they have not alleged their fraud claim with particularity.[6]

### E. Tortious Interference

"Tortious interference with contract occurs when the defendant, without justification, causes damage by intentionally interfering with a business relationship of which the defendant has knowledge." *Alternate Fuels, Inc. v. Cabanas*, 435 F.3d 855, 858 (8th Cir. 2006) (citing *Chandler v. Allen*, 108 S.W.3d 756, 760 (Mo. Ct. App. 2003)). Plaintiffs rely upon their previous arguments regarding Defendants' wrongful conduct.

In line with its prior discussion, the Court holds that Plaintiffs fail to allege a tortious interference claim. Plaintiffs do not allege any unauthorized actions by Defendants that caused Plaintiffs harm. Rather, as outlined, Defendants' actions were sanctioned by the parties' agreements, particularly the Provider Manual's provisions giving ESI ownership over the customer information.

---

[6] Moreover, even if Plaintiffs' claim were based upon a fraudulent omission, Plaintiffs' allegations are still insufficient because they "failed to plead fraudulent concealment with the specificity required by Rule 9(b)."*In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999).

### F. Unfair Competition and Uniform Trade Secrets Act

In their unfair competition claim, Plaintiffs assert that ESI shared confidential customer information with "other Express Scripts defendants in order to assist those other Express Scripts defendants to steal Plaintiffs' customers by switching them to Express Scripts' own mail order pharmacy." (Complaint, ¶71). In their Uniform Trade Secrets Act claim, Plaintiffs allege Plaintiffs' customer information is a protectable trade secret. (Complaint, ¶90). Plaintiffs further allege that ESI used Plaintiffs' confidential customer information "to compete unfairly with Plaintiffs." (Complaint, ¶94).

In their Opposition, Plaintiffs assert that they brought their claim under the Missouri Uniform Trade Secrets Act ("MUTSA").[7] To establish a violation of the Missouri Uniform Trade Secrets Act, Mo.Rev.Stat. §§ 417.450, *et seq.* ("MUTSA"), Plaintiffs must demonstrate (1) the existence of a protectable trade secret, (2) misappropriation of those trade secrets by Defendants, and (3) damages. Mo.Rev.Stat. § 417.453(2); *Secure Energy, Inc. v. Coal Synthetics, LLC*, 708 F. Supp. 2d 923, 926 (E.D. Mo. 2010). Plaintiffs contend that their MUTSA does not need to identify a statutory or constitutional source to survive a motion to dismiss. (ECF No. 23 at 15).[8] Likewise, Plaintiffs maintain that the information at issue here (customer lists and customer information) qualify for trade secret protection under Missouri law. (ECF No. 23 at 15 (citing *Brown v. Rollet Bros. Trucking Co.,* 291 S.W.3d 766, 777 (Mo. Ct. App. 2009)).

---

[7] In their Opposition, Plaintiffs assert that they allege a Missouri Uniform Trade Secrets Act claim, despite labeling their Sixth Claim for Relief as a "Violation of the Uniform Trade Secrets Act". (ECF No. 23 at 14; Complaint, p. 22).

[8] Plaintiffs cite non-Eighth Circuit cases to support this position. (ECF No. 23 at 15 (citing *Bigelow v. United Healthcare of Mississippi, Inc.*, 220 F.3d 339, 344 (5th Cir. 2000) and *Albert v. Carovano*, 851 F.2d 561, 571, n.3 (2d Cir. 1988)).

The Court holds that Plaintiffs' allegations are factually insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S at 570. Plaintiffs have not alleged sufficient facts to support a finding that customer lists and customer information constitute protectable trade secrets. Missouri case law identifies when customer lists and information constitute trade secrets:

> Customer lists are protectable as trade secrets only when they represent "a selective accumulation of information based on past selling experience, or when considerable time and effort have gone into compiling it." *Kessler-Heasley Artificial Limb Co. v. Kenney*, 90 S.W.3d 181, 188 (Mo. Ct. App. 2002). However, "'[t]o be protected, a customer list must be more than a listing of firms or individuals which could be compiled from directories or other generally available sources.'" *Id.* (quoting *Empire Gas Corp. v. Graham*, 654 S.W.2d 329, 331 (Mo.App.1983)).

*Brown v. Rollet Bros. Trucking Co.*, 291 S.W.3d 766, 777 (Mo. Ct. App. 2009).

Plaintiffs' Complaint only alleges that they develop their "customer information only through the expenditure of significant effort and expense," that it is "not generally available to the public from other resources," and Plaintiffs take "reasonable steps to maintain the secrecy of their customer information files containing that non-public information." (Complaint, ¶90). Plaintiffs' allegations are deficient because they do not identify what information, that is not owned by ESI, constitutes trade secrets. In any event, the enumerated information Plaintiffs seek to protect is the Member-specific information collected from Plan Members to fill prescriptions. This "customer list" is not a protectable trade secret under Missouri law. (ECF No. 28 at 14 (citing Mo. Rev. Stat. §417.453(4)).[9] Even if this information were somehow protectable, this Court has previously held that ESI is the owner of and has the right to use this information in the manner alleged. *See* Provider Manual, §2.4. Plaintiffs' purported MUTSA claim fails because

---

[9] *See* Mo. Rev. Stat. §417.453(4) ("Trade secret" is "information, including but not limited to, technical or nontechnical data, a formula, pattern, compilation, program, device, method, technique, or process").

Plaintiffs do not own or control the customer information and ESI used the information in a way the Agreements allow.

### G. Allegations against ESI Mail Order

Defendants argue that Plaintiffs have not alleged any claim against ESI Mail Order Processing, Inc., ESI Mail Order Services, Inc., or Express Scripts Holding Company. In response, Plaintiffs state that "the Complaint contains numerous allegations about them and their unlawful conduct." (ECF No. 23 at 15 (citing Complaint, *passim*)). Plaintiffs assert group pleadings are appropriate under these circumstances. (ECF No. 23 at 15-16) (citing *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13CV7639-LTS-MHD, 2015 WL 4040882, at \*\*2,4 (S.D.N.Y. July 2, 2015); *Hudak v. Berkley Grp., Inc.*, No. 3:13-CV-00089-WWE, 2014 WL 354676, at \*\*1,4 (D. Conn. Jan. 23, 2014); *Sprint Nextel Corp. v. Simple Cell, Inc.*, No. CIV. CCB-13-617, 2013 WL 3776933, at \*2 (D. Md. July 17, 2013)).

Because the Court has dismissed all other claims in this case, the Court dismisses the claims against ESI Mail Order Processing, Inc., ESI Mail Order Services, Inc., or Express Scripts Holding Company.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 14) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Request for Oral Argument (ECF No. 29) is **DENIED** as moot.

An appropriate Judgment is filed herewith.

Dated this 14th day of March, 2019.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**